# Wytheville.

## F. M. & D. E. CLARKSTON v. VIRGINIA COAL & IRON CO.

### JUNE 25, 1896.

#### Absent, Harrison, J.

1. PATENTS—*Calls for Natural Objects—Courses and Distances—Repugnancy.*—In a call in a patent which fixes a starting point at a stake on the top of a designated ridge, and continues " thence with the same " a given course and distance, the words " with the same " mean with the top of the ridge, or at the least the line must keep with the ridge. If the course and distance given fails to do this, and in great part leaves the ridge altogether, and it is impossible to give effect to both, the course and distance must yield to the permanent natural boundary, and the line be run with the top of the ridge, in accordance with the general rule, which prefers natural or permanent objects or monuments to courses and distances, when there is repugnancy between the two.

Appeal from a decree of the Circuit Court of Wise County, pronounced December 7, 1892, in a suit in chancery, wherein the appellants were the complainants, and the appellee was the defendant.

*Affirmed.*

This was a suit in chancery brought by the appellants against the appellee to enforce the specific execution of a contract for the sale of certain land in Wise county, Virginia. The land was sold at $12 per acre, and the controversy was over the quantity of land contracted to be sold. This involved the construction of the calls in the patent under which complainants claimed. The evidence on this point is sufficiently set forth in the opinion of the court.

*Duncan, Mathews & Maynor*, for the appellants.

*Bullitt & McDowell*, for the appellee.

RIELY, J., delivered the opinion of the court.

The controversy in this case turns upon the proper con-
struction of the sixth call of the patent issued by the Com-
monwealth in the year 1855 to David W. Wells, through
whom the plaintiffs claim.    The fifth call is in these words:
" Thence south 17°, east 200 poles, crossing the said creek
(Dixon's Branch) at 34 poles, to a stake on the top of Loo-
ney's Ridge."    The sixth call then proceeds as follows: " and
with the same north 88°, east 422 poles to a stake."

When the land was surveyed and the sixth call run accor-
ding to the degree given in the patent, the proper allowance
being made for the variation from the magnetic meridian, it
was found that the line, in consequence of a bend in Loo-
ney's Ridge towards the north, very soon left the top of the
Ridge, going down the side of the Ridge and crossing two
other well defined and prominent Ridges, Frank's Ridge and
Bear Pen Ridge.    In its course it descended into the valley
of Frank's Branch, and also into the valley of the right fork
of Bear Pen Branch, and after proceeding along south of
this branch crossed it and then struck the south side of Loo-
ney's Ridge, going over the top to the north side, and then
further on again to the top of the Ridge.    It thus appears
that the line, if run according to the degree, does not run
with the top of Looney's Ridge, nor indeed *keep* with the
Ridge, but in great part leaves it altogether, while the loca-
tive part of the call requires that the line should run with
the top of the Ridge.    The fifth call, as we have seen, is to
a stake *on top of Looney's Ridge*; then follows the sixth call:
" *and with the same*"; that is, with the top of Looney's Ridge,
" north 88°, east 422 poles to a stake."    Here is an irrecon-

cilable conflict between the natural boundary and the course and distance of the same call. It is impossible to give effect to both.

Where such repugnancy exists, the general rule is that both course and distance must give away to natural or permanent objects or monuments, and courses must be varied and distances lengthened or shortened so as to conform to the natural or permanent objects or monuments called for by the grant or survey. *Dogan* v. *Seekright,* 4 H. & M. 125; *Baker* v. *Seekright,* 1 H. & M. 177; *Coles* v. *Wooding,* 2 Pat. & H. 189; *Smith* v. *Davis,* 4 Gratt. 50; and *Marlow* v. *Bell's Lessee,* 13 Gratt. 527.

This rule was not controverted in argument, but it was contended on behalf of appellants that effect could be given to the entire call by construing the locative part of the call, " and with the same," to mean with the *general trend* of the Ridge and not with the *top* of the Ridge. This suggestion loses any force it would otherwise have when it is considered that the line, if run according to the degree given, forsakes in great part the Ridge altogether. The words, " with the same," imply that the sixth call is to run with the top of the Ridge, but if there be any ambiguity or doubt as to this, they necessarily require that the line must *keep with the Ridge.* Nothing less or short of this will satisfy the words, " with the same." The line must keep with the Ridge in any event, and as it does not if the degree be followed, the course and distance must yield to the permanent natural boundary, and the line be run with the top of the Ridge, which, the words, " with the same," in the connection in which they are used, mean, when properly construed.

Where a call is to run with a river or a public road from one terminus to another, the stream or road, if it lead to the other terminus, must be followed, though it may diverge from a direct line between the two points. And there is no good reason for the application of a different rule where the

call is to run with a mountain or a ridge, or with the top of it. In such case, the line of the natural boundary, if it conflict with the course and distance, must control.

In *Jackson* v. *Louw*, 12 John. 255, the deed for one of the pieces of land, after stating the course leading to a creek, used these words: "thence *up the same* to the southeast corner of a lot conveyed to Abraham Louw, Jr." In construing this call, Chancellor Walworth said: "There can be no doubt but this lot must follow the creek upon one of its banks or through the middle." This description can never be satisfied by a straight line. The terms " up the same," necessarily imply that it is to follow the creek according to its windings, and that must be the middle or centre of it. See also *Brown* v. *Huger*, 21 How. 305; and *Pike* v. *Monroe*, 58 Amer. Dec. 751.

In *Shultz* v. *Young*, 3 Iredell 385, the disputed boundary called for " the northwest corner of Richard Goode's tract," and proceeded " thence south with Richard Goode's line three hundred and ten poles to Thomas Goode's old corner."

As a matter of fact, this line did not reach to Thomas Goode's corner, but at the end of Richard Goode's line, it was necessary to run at right angles to reach Thomas Goode's corner. It was held that the line should be run 310 poles on Richard Goode's line and then a straight line to Thomas Goode's old corner, though it was necessary to run two lines instead of the one called for.

A similar construction was adopted and a like result reached in the case of *Marlow* v. *Bell's Lessee*, 13 Gratt. 527.

In *Harramond* v. *McGlaughon*, Tayl. 186, cited in a note to *Ex parte* Jennings, 6 Cow. 547, the court said: " When a deed, patent, or grant describes a boundary from a certain point down a river, creek, or the like, mentioning also course and distance, should the latter be found not to agree with the course of the river, &c., it ought to be disregarded, and the river considered the true boundary."

The case of *N. Y. & T. Land Co.* v. *Thomson* (Texas), 17 S. W. Rep. 920, was much relied upon by counsel for the appellants to prove that the line of the natural object (Looney's Ridge) referred to in the call in question should yield to the course and distance. That case is essentially different from this. There the surveyor was misled by a dry canyon and mistook it for Devil's river, and made his calls of course and distance to embrace the canyon instead of the river. The court rightly said in that case: "But as he (the surveyor) did not know where the river actually was, no random call therefor will control course and distance when there is a clearly defined starting point." But here there was no such mistake. And while the fifth call was not actually run any further than Dixon's branch, and the rest of the line as well as the sixth and seventh calls were protracted and simply plotted in on the survey, yet Looney's Ridge was in the plain view of the surveyor, was a distinct natural boundary, and well known to him, and he did not mistake it for some other object. The case referred to furnishes no ground for a different conclusion from the one we have reached.

The decree of the Circuit Court is right, and must be affirmed.

*Affirmed.*