## KING v. WATKINS et al.

### (Circuit Court, W. D. Virginia. September 19, 1899.)

**1.** EVIDENCE—ANCIENT DOCUMENTS.

The fact that an instrument is an ancient document does not affect its admissibility in evidence further than to dispense with proof of its genuineness, where it is otherwise admissible.

**2.** BOUNDARIES—ESTOPPEL—PRIVATE SURVEY BY REMOTE GRANTOR.

A private survey made at the instance of a remote owner of lands, through whom a plaintiff in ejectment claims title, does not constitute an estoppel against such plaintiff, to prevent him from claiming in accordance with his true boundaries, in favor of strangers to such title who claim adversely thereto, and who at the inception of their claims had no knowledge of such title or of the survey.

**3.** SAME.

The fact that a report of a private survey of a grant of lands was filed among the papers in a chancery suit involving a portion of such grant, and through the decree in which a plaintiff in ejectment derives his title, does not render such survey conclusive on him as to his boundaries, where it does not appear for what purpose it was introduced in evidence, or that it was recognized as accurate by the court, but where, on the contrary, the decree adjudged to plaintiff's predecessors in title a much greater quantity of land than, according to the survey, was embraced in the entire tract.

**4.** SAME—EVIDENCE—DECLARATIONS OF DECEASED PERSON.

A report made by a surveyor of a private survey of a tract of land made by him at the instance of the owners is not admissible, under the law of Virginia, to establish the boundaries of the tract, in litigation after the surveyor's death, on the ground that it constitutes the declarations of a deceased person.

**5.** SAME—SURVEY OF OTHER TRACTS.

Under the law as established by decisions in Virginia, another survey, made by a different surveyor at a different time, is not admissible to show the boundary lines of a survey in controversy.

**6.** SAME—DEED OF OTHER TRACTS.

To render a deed admissible in evidence upon the question of the boundary of a tract or grant other than the one described therein, it must contain a call for a corner or boundary line common to the two tracts, and, in the absence of such call, it cannot be rendered admissible by parol evidence that the two tracts had in fact a common corner or boundary.

**7.** SAME—DECLARATIONS OF ADJOINING OWNER.

The declarations of a deceased person are only admissible to prove the boundary line of a tract of land, on the ground that when they were made he was the owner of an adjoining tract, where his conveyance calls for such line as a common boundary; hence proof that he was in possession under a verbal contract cannot render such declarations competent.

**8.** SAME—CONSTRUCTION OF SURVEY.

The rule that calls for monuments in a survey prevail over courses and distances does not apply to mistaken or false calls; and where it is shown that the greater portion of the boundary of a grant of 500,000 acres was not run on the ground, but was platted in, and that the surveyor was mistaken or ignorant as to the true location of the monuments called for, so that, if they are taken as marking the boundary, the tract would contain but little over 100,000 acres, while as platted, according to the courses and distances given, it contains the quantity called for by the grant, the courses and distances must prevail, as being in accordance with the intention of the parties.

Action of ejectment to recover the Virginia portion of a grant of 500,000 acres lying in Virginia, West Virginia, and Kentucky. See King v. Campbell (C. C.) 85 Fed. 814.

98 F.—58

The subjoined diagrams will aid an understanding of the opinion. Fig. 1 is a plat of the Robert Morris 500,000-acre tract, returned by surveyor Taylor, with his certificate of survey. Fig. 2 represents the locality of the grant according to actual survey, the plaintiff contending for the location shown by the exterior lines, A, P, H, I, J, M, A, and the defendants contending for the location shown by the lines included therein, and indicated by the letters A, P, Q2, ZZ, MO, M2, A.

## Figure 1.

## Figure 2.

Rulings of the court during the trial.

Maynard F. Stiles, Daniel Trigg, and S. L. Flournoy, for plaintiff.

R. R. Henry, W. E. Burns, Maurice G. Belknap, and John A. Sheppard, for defendants.

PAUL, District Judge. In this action the plaintiff asserts title to a tract of 500,000 acres of land lying in the states of Virginia, West Virginia, and Kentucky, under a grant of the commonwealth of Virginia to Robert Morris dated June 23, 1795. The defendants, J. N. Watkins and others, claim to hold certain lands in Buchanan county, Va., under patents from the commonwealth junior to the grant of the plaintiff. They further claim that the lands which they hold under their grants are not within the boundaries of the lands to which the plaintiff claims title. The question of boundary, therefore, becomes an important one. The plaintiff, King, has introduced evidence to trace his title from the original grantee to himself. It is not necessary, for the purpose of deciding the question now before the court, to state here in detail the various conveyances and transfers on which he asserts his title. One of them, however, vests the title in John Peter Dumas, trustee. Plaintiff having introduced evidence tending to locate the boundaries of his grant according to his contention, the defendants offer in evidence a deed from Dumas, dated September 29, 1846, conveying to John Joseph Mary Schmit Thornfield 300,000 acres, to be cut off from the 500,000-acre tract, containing and reserving therein a mortgage for the purchase money; a deed dated October 1, 1846, from said Thornfield to Aguste Marie Francois Fermin Noverre De Sericourt and Louis Antoine Desverges De Maupertuis for the same land, subject to said mortgage; a power of attorney dated October 15, 1846, from said Sericourt to Louis Chitti, to manage said land; a power of attorney, of same date and of like nature, from Dumas to Chitti; a power of attorney dated February 23, 1847, from Sericourt and Maupertuis to Adolphe Julian Lafferriere, said Chitti having declined to act further as such attorney in fact; a decree of the circuit court of Kanawha county, then in Virginia, rendered January 21, 1859, in certain consolidated chancery cases affecting the Swan estate, and in which the trustees of said estate, through whom plaintiff claims, were appointed, which decree, among other things, declared that the said deed of September 29, 1846, from Dumas to Thornfield, "conveyed to him 300,000 acres of the Swan lands, lying in Logan and Tazewell counties, and that the same is now vested in A. D. De Maupertuis, subject to the mortgage, for the purchase money due to said trust," and decreed that said Maupertuis "hold the said 300,000 acres, situate in Logan and Tazewell counties, in fee simple, subject to the mortgage contained" in the deed aforesaid; a contract dated December 1, 1846, between said Chitti and one H. B. Harman, a surveyor, whereby said Harman agreed, for a stipulated price, to survey four lines of said 500,000-acre tract, and one line of the adjoining 480,000-acre tract; and a survey and report made by said Harman of the tract of land claimed to contain 500,000 acres, but which, according to said survey, contains 111,000 acres,—the offer

of the preceding documents being preliminary to the offer of the survey and report, to which report is attached the receipt of Harman to Lafferriere for the contract price. To the introduction of this survey and report the plaintiff objects. The defendants insist that they are admissible for the purpose of showing the true boundary of the land in controversy. It is claimed that the report, including the survey, is admissible in evidence—

First. Because it is an ancient document. The doctrine of admitting ancient documents in evidence, without proof of their genuineness, is based on the ground that they prove themselves, the witness being presumed to be dead. The doctrine goes no further than this. The questions of its relevancy and admissibility as evidence cannot be affected by the fact that it is an ancient document. It is no more admissible on that ground than if it were a newly-executed instrument. Greenl. Ev. §§ 21, 142, 144, 576. Besides, the genuineness of this document has been proved by calling a witness to prove the signature of H. B. Harman, the surveyor, and the doctrine touching ancient documents does not apply.

Second. It is claimed that this evidence is admissible by way of estoppel. The court is unable to see how the doctrine of estoppel can be applied by the defendants in this case, based on the survey made by Harman, so as to estop the plaintiff from asserting his title to the land otherwise than as the boundaries are ascertained by the survey of Harman. Bigelow on Estoppel says, of the kind of estoppel sought to be asserted here, that it consists of "facts in pais," acts, admissions, or conduct, which have induced a change of position in accordance with the real or apparent intention of the party against whom they are asserted. Again, the same writer, speaking of estoppel by conduct, says (page 543): "In its most common phase, this estoppel is founded upon deceit, and has its justification in the duty of courts to prevent the accomplishment of it." The principle thus announced can have no possible application in this case. Nor can we invoke the doctrine of estoppel by agreement. That King, a remote purchaser of a tract of land sold and the sale approved in a pending chancery cause, whether it be a public or private sale, can be bound by the survey made by Harman, as to the boundaries of the land in question, and that the defendants can plead the survey as an estoppel, does not seem to demand discussion. The survey was an unofficial, ex parte, and purely private proceeding, and though the report and plat of the survey are produced by the defendants from the papers in chancery causes pending in Kanawha county, in which some of the affairs of the claimants of the land were settled, and in which the sale to plaintiff's grantor was made, they produce nothing to show through whom or for what purpose they got there, or that any action whatever was had with reference to them. On the contrary, it appears from the decree offered by defendants in this connection, from the same court and cases, that more than 11 years after this Harman survey was reported, according to which the tract contains but 111,000 acres, that court held that the deed from Dumas to Thornfield for part of the tract in question "conveyed to him 300,000 acres of the Swan lands," and decreed "that the said A. D. De Maupertuis hold

the said 300,000 acres." There is no contract between plaintiff, or those under whom he claims, and defendants, concerning said survey, or any other matter, and no privity whatever between them, nor is there any claim of any representations relative to the same. Indeed, the defendants have laid stress upon their assertion that, when they acquired their claims of title, they had never heard of the Morris grant or of its claimants. Hazardous, indeed, would it be to make an experimental survey of one's own land, or to purchase land of which some remote owner or claimant had chanced to make such survey, if, as contended by defendants, that survey, however erroneous, could afterwards be invoked, even by a stranger, to estop the owner from asserting title according to his true boundaries. There is wanting in the present case every element of estoppel.

Third. It is further claimed that this Harman survey was filed in the papers in said chancery cause in Kanawha county, and was notice to the plaintiff, King, and that he is therefore bound by it, and estopped from questioning the boundaries established thereby. It will be noted that King purchased from Le Moyne, Le Moyne from Armstrong, and Armstrong from Reed, the trustee, who sold by direction of a court of chancery. The court is at a loss to see how a purchaser of the 500,000-acre tract of land, whether at a public or private sale, whether judicial or not, could possibly be bound by such a survey, whether he had notice of it, either actual or constructive. Notice could have no effect, unless it created an estoppel.

Fourth. The remaining ground upon which it is insisted that this survey should be admitted as testimony is that it is competent evidence to prove the declarations of a deceased person as to the boundary lines of the land in question. The doctrine relied upon has been so frequently and thoroughly discussed on other evidence offered during the trial of this case that the court finds no difficulty in applying it in this instance. Harriman v. Brown, 8 Leigh, 697, is a leading case on the subject, and has been cited in numerous decisions, and frequently quoted by text writers. It is thus stated as the rule in Virginia:

"Evidence is admissible to prove declarations as to the identity of a particular corner, tree, or boundary, made by a person who is dead, and had peculiar means of knowing the fact, as, for instance, the surveyor or chain carrier upon the original survey, or the owner of the tract or of an adjoining tract calling for the same boundary, and also tenants, processioners, and others whose interest or duty should lead them to diligent inquiry and accurate information as to the fact, always excluding those declarations which are liable to the suspicion of bias from interest."

Without discussing the question whether this doctrine applies to written statements of deceased persons, or is confined to verbal declarations (and the latter seems to be the case), it is very clear that the written statements of Harman do not fall within the principle just stated. He was not the surveyor or chain carrier in making the original survey, he was not the owner of this tract nor of an adjoining tract, nor had he any interest in the land which rendered his declarations admissible as proof of any corner or boundary line. It should be remembered that this kind of evidence, which is hear-

say, is only admitted from the necessity of the case. It is admissible where no better evidence can be had. So far as the evidence has been developed in this case, the parties interested have as good opportunities to make surveys of the lands in controversy for the purpose of ascertaining the true boundaries of the same as Harman had. The survey and report are not admissible.

In the further progress of the case, the defendants offer to prove by a witness, R. P. Spratt, and avow that they can and will prove by him and other witnesses, "that Isaac Spratt, now deceased, the grandfather of the witness Spratt, many years ago, and when the witness was about 12 or 14 years of age, pointed out to the witness three sugar-tree stumps, then about 20 poles below the mouth of Gilbert's creek, in a bottom of Guyandotte river, and stated to the witness that they were the stumps of the three sugar tree corner of the big survey, and that the tract of land claimed by the plaintiff is the same one referred to as the big survey, or the French survey; that at the time the declaration was made by Isaac Spratt he was the owner and in the actual possession of that portion of a tract of 7,800 acres granted by the commonwealth of Virginia to Gordon Cloyd on the 2d day of July, 1796, which lies adjoining, and calls for as a common corner and line the three sugar trees, 20 poles below the mouth of Kettle creek, which has been shown to be Gilbert creek, and with the line of the plaintiff survey, which calls for north, 10 east, from the three sugar trees; and, for the purpose of proving said declarations, the defendants offer in evidence the survey of the Gordon Cloyd 7,800 acres, bearing date on the 21st day of December, 1795, and the grant issued thereon to Gordon Cloyd, and also a deed from Kent and others, sole heirs of Gordon Cloyd, to James P. Christian; and further offer to prove by the witness R. P. Spratt and others, and avow that they can and will prove, that Isaac Spratt purchased the portion of the Cloyd survey referred to, and took and held possession thereof, and afterwards caused the same to be conveyed by deed from James P. Christian to John Stafford, a son-in-law of Isaac Spratt the declarant;" and offer also the deed from James P. Christian to John Stafford, dated the 5th day of April, 1841; and that, at the time of the declarations aforesaid, the said Isaac Spratt was in possession of the land, claiming the same, coextensive with the boundaries mentioned in the deed from Christian to Stafford, up to the common corner and line, and was cultivating the same. Plaintiff, by counsel, objects to the introduction of the proposed evidence on the following grounds: First. The proffer does not claim that Spratt ever had any paper title to any land calling for the same boundary as plaintiff's grant, and the evidence is not competent and proper to prove title in said Spratt in contradiction of the deeds offered vesting title in John Stafford. Second. The alleged declaration, if made, was made, according to the proffer, when the declarant Spratt was asserting a claim of title without color to part of the Cloyd tract, which is junior and inferior to the Morris grant, and which would be overlapped and included in, and made invalid by, the elder Morris grant, unless the declarant could establish and confine the Morris grant at the point

indicated by him, making said declarations clearly in the interest of the declarant. Third. Because the Cloyd grant, being based upon a survey junior to the survey upon which the Morris grant is based, and not made or reported by the same surveyor, is not competent evidence of the location of boundary of the elder Morris grant. The Cloyd survey shows upon its face to be an office survey, not made upon the ground, the survey being completed only two days after the entry; and the surveyor who reported the same could not have had any reliable information concerning the Morris grant, and any call for the same, or boundary thereof, could give Spratt no more certain or reliable information concerning the location of the boundaries of the Morris grant than the surveyor himself, who was not upon the ground, could have. Fourth. Because Spratt is not alleged to have pointed out the stumps as a corner or boundary of any land owned or claimed by himself, to which boundary his knowledge is presumed to be limited, but to have pointed them out as the corner of a survey or tract to which it is not asserted he made any claim, or about which it appears or can be presumed that he had or could have any reliable personal knowledge or information. Declarations of the character proposed are confined to the boundaries claimed by the declarant. Fifth. The deed from Kent to Christian, according to which defendants claim Spratt was in possession and claiming title, does not call for plaintiff's boundary, and declarant's declaration did not purport to relate to any alleged corner of declarant's land.

Relative to the introduction of other surveys in the trial of title to land, the Virginia decisions state the doctrine as follows:

"In a controversy concerning the location or boundary of a tract of land patented by the commonwealth pursuant to a survey, the calls and descriptions of another survey, made by the same surveyor, about the same time or recently thereafter, of a coterminous or neighboring tract, upon which last-mentioned survey the commonwealth issued a grant, whether to a party to the controversy or to a stranger, is proper evidence upon such question of location or boundary, unless clearly irrelevant." Overton's Heirs v. Davisson, 1 Grat. 211; Clements v. Kyles, 13 Grat. 475; Hutch. Land Titles, § 518; Reusens v. Lawson, 91 Va. 226, 21 S. E. 347.

The survey which is offered in evidence was not made by the same surveyor about the same time or recently thereafter. The cases cited above all use the language employed by the court in Overton's Heirs v. Davisson. The court knows of no decision which holds that a survey made by a different surveyor and at a different time from the surveyor and the time stated in the survey in controversy is proper evidence upon the question of boundary or locality in fixing the boundary lines of the survey in controversy. The decisions of the courts and the statements of text writers being uniform in stating that a survey made at the same time or recently thereafter by the same surveyor is admissible to show the boundaries of another survey, and the court finding no decision, nor the statement of any text writer, and being referred to none by counsel, that a survey made by a different surveyor, at a different time, is admissible to show the boundary lines of a survey in controversy, the court holds that the survey, and the grant issued thereon, of-

fered by the defendants in this case, are not admissible in evidence.

As to the two deeds offered in evidence, the grantors in the deed from Kent and others to Christian, dated the 30th day of January, 1838, do not in any way in the deed show themselves to be the heirs of Cloyd, the grantee in the patent of July 2, 1796. This deed does not call for any corner or boundary line in the patent under which the plaintiff claims. It is proposed to show by oral testimony that the grantors in this deed were the sole heirs of Cloyd, the grantee in the patent of July 2, 1796, and that the land conveyed was bounded by a common corner and line of the survey of the plaintiff. The deed from Christian to Stafford, dated April 5, 1841, contains no call for a common corner or boundary line of the survey or grant of the plaintiff, but it is proposed, as in case of the deed from Kent and others to Christian, to prove such corner or boundary line by oral evidence.

But the most important facts which the defendants offer to prove by the witnesses R. P. Spratt and others are that, when the witness R. P. Spratt was 12 or 14 years of age, his grandfather Isaac Spratt pointed out to the witness three sugar-tree stumps, then about 20 poles below the mouth of Gilbert's creek, in a bottom of Guyandotte river, and stated to the witness that they were the stumps of the three sugar tree corner of the big survey, and that the tract of land claimed by the plaintiff is the same referred to as the big survey or the French survey; that, at the time of the declarations made by Isaac Spratt, he was the owner and in actual possession of that portion of the tract of land granted to Cloyd which lies adjoining and calls for a common corner and line of the plaintiff's grant. The doctrine as to the admissibility in evidence of the declarations of a deceased witness, in the trial of title to land, has been several times referred to during the consideration of this case, but, for a clearer application of it to the facts under consideration, the court will restate it. It is thus announced in Harriman v. Brown, 8 Leigh, 697:

"Evidence is admissible to prove declaratains as to the identity of a particular corner, tree, or boundary made by a person who is dead, and who had peculiar means of knowing the fact; as, for instance, the surveyor or chain carrier upon the original survey, or the owner of the tract, or of an adjoining tract calling for the same boundary, and also tenants, processioners, and others, whose interest or duty would lead them to diligent inquiry or accurate information as to the fact, always excluding those declarations which are liable to the suspicion of bias from interest."

In order to lay the foundation for the admission of the declarations of Isaac Spratt, it is proposed to prove by oral testimony that he was at some time between the execution of the deed from Kent and others to Christian, in 1838, and the making of the deed from Christian to Stafford, in 1841, the owner of the land conveyed in the deed to Stafford, and that the same had a corner and boundary line in common with a corner and boundary line in the grant under which the plaintiff traces title. It is not claimed by counsel for the defendants that his purchase is shown by deed or other writing, such as ordinarily evidences the transfer of ownership of real estate in Virginia. It is proposed to prove by verbal testimony that he

was invested with ownership of the land referred to by oral agreement or contract. The witness is offered for the purpose, not only of proving the declarations of Isaac Spratt, but to go beyond that, and prove ownership in the declarant, in order that his evidence may be admitted as evidence. So guarded is the law of Virginia touching contracts for the sale of real estate that it is provided by statute that no action shall be brought upon any contract or agreement for the sale of real estate, or the lease thereof for more than a year, unless the contract be in writing, and signed by the party to be charged thereby or his agent (section 2840, Code Va. 1887); and this was the law in Virginia when the alleged contract of purchase was made by Isaac Spratt. It is unnecessary to discuss the question of an equitable title in land, as where the purchaser has paid the purchase price, and taken possession of the land or exercised other act of ownership. In proving declarations of the owner of land, he must be the owner of the tract in controversy, or of an adjoining tract calling for the same boundary. There cannot be a call for a common corner or boundary line in a verbal contract for the sale and purchase of land. The meaning of calling for a corner or boundary is well understood in law. It is necessarily applicable to written instruments, such as entries, surveys, patents, grants, and deeds. This is shown by the definition of the term "call." It is thus defined in Brown's Law Dictionary: "In American land law, the designations in an entry, patent, or grant of land of visible natural objects as limits to the boundary." Webster, under the head of "American Land Law," gives the following definition: "A reference to, or statement of, an object, course, distance, or other matter of description, in a survey or grant, requiring or calling for a corresponding object, etc., on the land." To sustain the contention of the defendants would be to give to the doctrine of the admission of the declarations of a deceased witness a latitude that has never received the sanction of any court, and would be an invasion of the rules of evidence that would render the best-settled land titles insecure.

The court excludes the survey and grant offered in evidence because the survey was not made by the same surveyor, about the same time or shortly thereafter, as the survey made under which the plaintiff claims. The deeds from Kent and others to Christian, and from Christian to Stafford, are not admissible, because neither of them calls for a common corner or boundary line in the grant under which the plaintiff claims. The evidence of the witness R. P. Spratt is not admissible for the purpose of establishing ownership of land and calls for a corner or boundary by oral testimony.

In this case the plaintiff contends that the 500,000-acre tract of land involved should be bounded by the lines represented on the trial map by the letters A, P. H, I, J, M, A. The defendants contend that it should be bounded by the lines represented by the letters A, P, Q2, ZZ, MO, M2, A. The first line, and the first and second corners, A and P, are thus agreed upon, or, if not agreed upon, are established by indisputable evidence. The corner trees at A were found by the official surveyor in this case, and those called for

at P were proved by Daniel Harman, an old surveyor, who saw them for many years. The evidence of the official surveyor and of the other surveyors, examined as experts, shows that none of the other lines were actually run, but were platted lines. The defendants, to sustain their theory as to the true boundary of the survey, insist on running the lines according to the calls for certain monuments, as to the true location of which the surveyor is shown by the evidence to have been mistaken or ignorant. These monuments are Knox creek, Sandy river, Turkey creek, Buffalo creek, Guyandotte river, and three sugar trees at the mouth of Gilbert's creek. As to the evidence offered by the defendants to prove the former existence of three sugar trees below the mouth of Gilbert's creek, it is wholly insufficient to establish the identity of any such trees as trees marked by Taylor as a corner of the tract; but, assuming them to have been such, not having been marked in the process of running any line to or from them, as shown by the expert testimony and admitted by the defendants, they could only have been called for through the same mistake and confusion as to locality that characterize the other random calls for monuments, and are entitled to no greater consideration. These monuments mentioned in the survey are placed by the original surveyor at locations widely different from the positions they are shown to occupy by the actual surveys in this case. That the surveyor, Taylor, was mistaken in the location of these calls, or was ignorant of their true location relative to the lines laid down on the plat accompanying his survey, is shown by the testimony of the expert surveyors, and by the papers, grant, survey, and plat in the case, when applied to the actual geography of the country. On this ground the plaintiff asks the court to instruct the jury that these mistaken or false monuments are to be disregarded, and that the boundary lines, except the line from A to P, shall be established by the courses and distances stated in the survey and grant. The contention of the defendants that the boundary lines shall be run according to the calls for these mistaken or false monuments, instead of by the courses and distances, is based on the familiar principle that natural or reputed boundaries or lines of marked trees ought to be established in preference to mere course and distance. The reason for the rule is thus stated in Hutch. Land Titles, § 529:

"Monuments are facts visibly indicating the extent of the land and the direction of the boundary lines. The courses or distances laid down in the deed or plat are merely descriptive of the facts. They are necessarily based upon measurement, estimation, and calculation. Their accuracy depends upon the skill of the surveyor, and they may not be in accord with subsequent surveys. The monuments, however, actually found or placed upon the ground, are always, as long as they exist, in the same direction and at the same distance from each other."

Again:

"The controlling influence of a monument, natural or artificial, arises upon the supposition that it is more certain than course and distance. But, if in a given case it should prove less certain, the rule would fail, with the reason for it. Where the manifest intention of the parties requires the rejection of a call for one or more monuments in order to uphold the deed, the intent

must prevail." White v. Luning, 93 U. S. 514, 23 L. Ed. 938; Hutch. Land Titles, § 535.

The rule that monuments prevail over course and distance does not apply to mistaken or false calls, as in a case like this, where the evidence conclusively shows that the surveyor was mistaken or ignorant of the location of the monuments called for, and of the local geography of the mountainous territory in which he was locating the survey. Cattle Co. v. Thomson, 83 Tex. 169, 17 S. W. 920, is a case that received the approval of the court of appeals of Virginia in Clarkston v. Iron Co., 93 Va. 258, 24 S. E. 937. In that case the court said:

"There are but two controlling questions in this case: (1) Whether the call for Devil's river, made in the original surveys of Keuchler, should be extended so as to cross the river, or should yield to course and distance. (2) * * * Keuchler intended to place the surveys on Devil's river, but in his attempt to do so he evidently mistook the true course of the river, and was misled by a dry cañon and the general course of the river as he found it when he established the southwestern corner of survey No. 26, in block C of the surveys, and the northeast corner of No. 84, in block I. It is true that the remaining surveys were not run upon the ground, but were platted in upon the map. They were platted in, however, from initial points fixed and clearly defined upon the ground. Keuchler may have intended to appropriate the land up to and across the river, but, as he did not know where the river actually was, no random call therefor will control course and distance, when there is a clearly-defined starting point. It would be utterly at variance with all rules upon the subject to so hold. These surveys must be run out as platted in accordance with the field notes, the call for Devil's river yielding to the calls for course and distance."

The calls for monuments relied on by defendants in the case at bar are clearly random calls, and the rule which holds that monuments must prevail over course and distance does not apply to such calls. To hold differently would give the rule an extension that has not received the sanction of any court, and that cannot be sustained by the reasons given for its adoption. An attempt to locate the survey according to the defendants' contention, and in harmony with natural monuments, disregarding the given courses and distances, gives results that could only come from the gravest mistakes in the calls for natural objects. The courses and distances are shown to be right by the fact that, when platted out, they plat back exactly to the beginning point, in the form shown by the original plat, and embrace the precise quantity called for; but if we adopt defendants' method, and run by natural objects, more than four-fifths of the area is sacrificed, the shape of the tract is destroyed, the upper half of the tract is reduced from a minimum width of more than $20\frac{2}{3}$ miles, and a maximum width of 25 miles, to a minimum width of nothing, and a maximum width of about 5 miles, the southern end being reduced almost as much, and some of the streams called for that should be partly within the tract are left entirely outside, others are found flowing almost opposite to their supposed course, and others are missing altogether, while the distances are reduced from 20 miles to 5 miles, and courses varied more than 70°. Such errors in the location of and call for natural objects could not occur in the case of actual survey, but are such as

would almost inevitably result from an attempt to lay down so large a tract of land by protraction in a wilderness country, of which there was no established geography, and of which the surveyor, as shown by the evidence, had no correct knowledge. "The general rule, that the intention of the parties is to be ascertained in determining the proper construction of the contract, applies with the same effect to matters of description, in deeds and other conveyances, as to covenants and condition therein." Hutch. Land Titles, § 527. That it was the intention of the commonwealth to grant 500,000 acres of land to Robert Morris, and of Robert Morris to acquire title to that quantity, cannot be questioned by the documentary evidence, such as the plat, survey, and grant. That this intention would be defeated by adopting the construction contended for by the defendants does not admit of discussion. For the reasons stated, the monuments on which the defendants must rely to establish their theory of the true boundary of the survey in controversy must be disregarded by the jury, and the boundaries must be ascertained by courses and distances. And the court will instruct the jury accordingly.

Verdict for the plaintiff.