# $\mathfrak{Staunton}$

G. Mark French and R. L. Wright v. Clinchfield Coal
Corporation.

September 9, 1938.

Present, All the Justices.

The opinion states the case.

*S. H. & Geo. C. Sutherland,* for the appellants.

*W. L. Rush, M. M. Heuser* and *A. K. Morison,* for the appellee.

HUDGINS, J., delivered the opinion of the court.

This suit involves the legal and equitable title to a tract of land alleged to contain a hundred acres, more or less, but in fact containing one hundred and fifty acres, lying on the south side of Cumberland Mountain in Dickenson county.

The Clinchfield Coal Corporation claims title to the land involved under a grant or patent issued on July 3, 1860, by the Commonwealth to A. F. Henderson for 2,317 acres.

G. Mark French and R. L. Wright claim title under a grant from the Commonwealth bearing date March 22, 1926, conveying to them a tract of one hundred acres, more or less. When the Clinchfield Coal Corporation received notice that the land had been granted to French and Wright, it immediately notified them that the land involved was not waste and unappropriated land, but was owned by it. French and Wright took possession under their grant and erected an inexpensive log cabin thereon. The original bill, filed in June, 1932, sought to have the grant to French and Wright canceled. On August 22, 1935, the trial court decided that the complainant, the Clinchfield Coal Corporation, had failed to prove that the grant to French and Wright had been procured through fraud, but intimated that this deed constituted a cloud upon complainant's title. Thereupon complainant amended its bill and prayed to have this cloud removed. The respondents demurred and answered the amended bill. The demurrer was overruled. Upon request of respondents, a jury was duly sworn to try the issues of fact raised by the pleadings. The verdict returned was in favor of respondents, but on motion of complainant it was set aside and a decree entered declaring the deed from the Commonwealth to French and Wright to be a cloud upon complainant's title. Respondents in the trial court obtained this appeal to review that decree.

One ground for the attack on the decree is that the trial court erred in permitting appellee to amend its bill. Section 6248 of the Code authorizes a court of chancery to remove a cloud on the title, although the complainant may not be in possession, and if an issue of fact be raised which, but for the provisions of the section, would entitle either party to a trial by jury, the court upon request shall order such issue to be tried by a jury. The procedure adopted by the trial court conformed to the provisions of this section.

Appellants further contend that five deeds in appellee's chain of title are void and that appellee failed to prove the land involved lies within any grant from the Commonwealth under which appellee claims. It is conceded that if the

land is properly described in appellee's chain of title prior to the deed from Patrick Hagan and wife bearing date March 1, 1905, to Bond & Bruce, then the description in the deeds by these grantors and their successors in title to appellee is sufficient and passes title.

The grant dated July 3, 1860, from the Commonwealth to Augustus F. Henderson, described by metes and bounds some 2,317 acres lying on the south side of Cumberland Mountain in the county of Wise and subsequently included within the area of Dickenson county when it was formed in 1880. The attack upon this grant is the spearhead of appellants' whole contention, the essence of which is stated by them to be: "This grant was of such doubtful location that the jury was well warranted in finding that complainant had not located it nor shown the land in controversy was inside its boundary."

The grant to Henderson is in correct form, duly signed, sealed, and acknowledged by the proper officers of the Commonwealth, and duly recorded. The only question is the proper location on the ground of the land described in the grant. The grant begins: "Know Ye, that in conformity with the survey made on the 22nd day of February, 1859, by Virtue of Land Office Treasury Warrant No. 22,915. * * *

"There is granted by the said Commonwealth unto Augustus F. Henderson a certain tract or parcel of land containing 2,317 acres lying in Wise county, on the waters of the Pound Fork of Big Sandy River, and on the South side of Cumberland Mountain, on the northeast side of the Twin Branches and bounded as follows, viz:

"BEGINNING at a Spruce pine, beech and maple on the bank of said river, corner to Dale Carter's survey, thence S 70° E 13 poles to the mouth of the Twin Branches, Corner to Jessee Bartley's land * * * "

There follows a survey of the land which is apparently complete. Two large maps were made by three engineers employed by appellee to retrace the survey on the ground. This retracing was done in 1931, after this con-

troversy arose, and some seventy-two years after the original survey. All three of these surveyors testified that they had no trouble in locating the point of beginning, that while they could find no trace of the spruce pine and maple, they did find the beech in the Dale Carter line, properly marked as a corner. In retracing this survey, the engineers found forty-eight natural objects or marked trees called for in the original survey; that is, sixty-seven per cent of the calls were found properly marked on the ground. The natural objects called for in the deed did not always coincide with the courses and distances. Whenever this appeared, the engineers disregarded courses and distances and traced the lines to the natural objects called for in the survey of February 22, 1859. The plot made from this retracing shows that the boundary line intersects itself twice on the extreme southeastern corner of the land, several miles distant from the land involved in this controversy. While this is unusual, it does not follow that the entire grant is void on that account.

The substance of appellants' argument is that the courses and distances set out in the original survey, allowing for the variation of the needle, are not in exact accord with the courses and distances between the natural objects, and they mention in their brief at least five such incidents. The general rule is that where an irreconcilable repugnancy exists, both courses and distances must give way to natural or permanent objects or monuments, and courses must be varied and distances lengthened or shortened so as to conform to the natural or permanent objects called for by the grant or survey. *Clarkston* v. *Virginia Coal & Iron Co.*, 93 Va. 258, 260, 24 S. E. 937.

It is further claimed that the plot made from retracing the old survey is inaccurate and uncertain, because no one testified that the natural objects or marked trees found by the engineers in 1931 were the same natural objects or chopped trees referred to in the original survey. There were forty-eight of these natural objects mentioned in the original survey found in the boundary lines which the en-

gineers found in retracing the lines in 1931. All the chops on the trees were old. No one attempted to state how old they were, even if it were possible to have done so. Mr. Lambert, one of the engineers, said that "the trees showed very old marks. Of course, you could not determine what year they were made, but they were old." If these old line and corner marks were not made by the original surveyor in 1859, it seems a remarkable coincidence that sixty-seven per cent of them coincided with marked corners and natural objects named by him in that survey. If one started at the point of beginning, which seemed to have been well marked and easy to ascertain, and went from one definite object named in the survey to another, he would eventually approach and reach the starting point from the opposite direction from which he started. Such a person, by disregarding courses and distances in walking around the land, would not always be on the boundary line, as there are a number of calls to non-existent stakes and some of the trees are no longer in existence. Many of the corners had been previously established in locating lands of other parties. At the time the Henderson grant was made, all of this area was covered with timber. Since that time, fields have been cleared, objects called for in the original grant have been destroyed, and the lapse of years has taken its toll of line-marked trees. Notwithstanding this, the engineers testified that the natural objects called for in the deed, and the courses and distances between the marked objects found to be correct enabled them to locate upon the ground the Henderson patent with reasonable certainty.

The substance of the evidence offered by appellants to overcome this positive testimony is that they had heard an old experienced surveyor say before he died that he had tried to locate the Henderson patent, and in his opinion it could not be done. Even if this testimony was admissible, it is not sufficient to sustain a verdict based thereon.

Prior to the formation of Dickenson county, the Henderson land was assessed for taxation in Wise county. Upon the nonpayment of taxes, the land was conveyed by T. G.

Wells, clerk of the court of the county of Wise, to Charles W. Kilgore by deed dated February 17, 1877. The Henderson heirs redeemed this land, and by deed bearing date February 25, 1878, Charles W. Kilgore conveyed the land to Anna M. Henderson, William A. Henderson, and Augustus F. Henderson, "being children and heirs at law of A. F. Henderson." As a result of this conveyance the land again stood on the land books in the name of the Henderson heirs as if title had never passed from the estate of A. F. Henderson.

Dickenson county was formed in 1880, and thereafter the land was assessed for taxation against the heirs of A. F. Henderson in this county. It was returned delinquent for the year 1882 and was sold by Columbus Phipps, Clerk, to A. G. J. Baldwin. Appellants contend that this deed is void for the following reasons: (1) That it was sold for the nonpayment of taxes in 1873 and the title was still outstanding and could not be further assessed for taxes; (2) That the assessment was improper—it should have been assessed in the name of Anna M. Henderson, William A. Henderson, and Augusta F. Henderson; (3) That the quantity of land assessed in the name of A. F. Henderson heirs was 1,876 acres located seventeen miles northwest of the courthouse, whereas the land in fact was ten miles northeast of the courthouse; (4) That the tax deed calls for 622 acres instead of 1,876 acres; (5) That it shows that the name of the purchaser was A. G. Baldwin, while the deed is to A. G. J. Baldwin; (6) That the clerk had no power to sell less than the entire tract; (7) That the deed does not contain a proper seal.

The recital in the deed from Charles W. Kilgore shows that the land was redeemed by the heirs of A. F. Henderson. The deed from Charles W. Kilgore to the Henderson heirs is simply a release of any interest he may have had by reason of the fact that he had become the purchaser at a delinquent tax sale. Under these circumstances the assessment of the land against A. F. Henderson heirs was not illegal under sec. 474 of the Code of 1887.

In 1882, when this land was assessed, the courthouse was located on McClure Creek, some seven or eight miles from Clintwood, its present location, and hence was approximately seventeen miles away. The situs of the courthouse was changed by the Act of the General Assembly of 1882. See Acts 1882, p. 102. This objection is frivolous.

The record shows that before the conveyance was executed by the clerk of Dickenson county, a surveyor went upon the land owned or standing in the name of the Henderson heirs, located, and surveyed it. Upon this report it was judicially determined that the 622 acres was the same land assessed and returned delinquent against the Henderson heirs for the year 1882. Section 639 of the Code of 1887 provides that the "sale of tracts of land shall be of each tract separately or such quantity or part thereof as shall be sufficient to satisfy the taxes and levies thereon, with interest and costs." The positive testimony of Messrs. W. L. Karr and A. K. Lambert, two of the surveyors employed by appellee, was that they retraced the survey incorporated in the tax deed. Their survey is shown in a green border on the plot filed as an exhibit. While this survey, as located, may include small parts of other tracts not included in the Henderson survey, both surveys include the land in controversy. The land conveyed by this tax deed did not purport to be the entire 2,317 acres granted to Henderson.

The deed is between "Columbus Phipps, Clerk of the Court of Dickenson county, and A. G. J. Baldwin," and concludes thus: "Witness the following signatures and seal.

Columbus Phipps. (Seal).<br>Clerk of Dickenson County."

In rejecting a similar objection to a tax deed, Judge Whittle, in *Lacks* v. *Latham,* 116 Va. 424, 426, 82 S. E. 75, 76, said,

"1. The first ground of objection rests upon the fact that the deed concludes: 'Witness my hand and seal of the court, the day and year first above written. Thomas Easley, Clerk, (Seal).'

"Admittedly the instrument would have been free from objection if the words 'of the court' had been omitted. Those words, it will be observed, are not necessary to give meaning to the paper, and neither their presence nor absence can affect its validity. They are, in short, merely superfluous, and may be rejected. *Utile per inutile non vitiatur.* Besides, the omission to recognize the scroll as a seal in the body of the instrument *at all* would have been cured by its solemn recognition by the grantor at the time of acknowledgment for record, inasmuch as *the writing* is required by statute to be sealed. *Parks* v. *Hewlett,* 9 Leigh (36 Va.) 511; *Ashwell* v. *Ayres,* 4 Gratt. (45 Va.) 283; *Clegg* v. *Lemessurier,* 15 Gratt. (56 Va.) 108; 2 Minor on Real Property, sec. 1139."

The tax deed appears to be regular on its face and in compliance with the statutory law in force at the time the deed was executed. At least, appellants offered no evidence showing that there was any material irregularity except those enumerated, which are not sufficient to vitiate the tax deed even if appellants had the right to make a collateral attack upon it.

A deed bearing date May 14, 1890, recited that a dispute had arisen between Patrick Hagan and Jacob and A. G. J. Baldwin; that Patrick Hagan claimed that the 2,317 acres of the Henderson grant was included in a grant made by the Commonwealth in 1797 to Thomas Thompson for 180,000 acres and that he, Patrick Hagan, owned all of the Thompson grant; that Jacob and A. G. J. Baldwin claimed to be the owners of the remainder of the Henderson patent; and that in a compromise settlement of the respective claims Jacob and A. G. J. Baldwin executed the deed conveying all their interest in the Henderson patent to Patrick Hagan.

Subsequently, on March 1, 1905, Patrick Hagan and wife conveyed 142.46 acres, described by metes and bounds and being a part of the Henderson grant, to Bond & Bruce. This tract is shown on the exhibits to be the identical land granted by the Commonwealth to French and Wright, except that the latter grant extended a few feet to the east

of the eastern boundary of the 142.46 acres, which eastern part of the French-Wright grant is triangular in shape. This small triangle lying to the east of the Jacob and A. G. J. Baldwin tract, is included in the 616 acres patented to Isaac Kilgore, which tract bounds the Henderson patent on the north. Appellee is the owner of the Kilgore patent and its title thereto is not seriously questioned. Hence no further reference will be made to this small triangular-shaped acreage.

Appellants rely upon the recitals in the deed from the Baldwins to Patrick Hagan to show that the Henderson grant lies within a senior grant and is therefore void. These deeds are evidence tending to establish that Patrick Hagan had acquired title to both the Henderson and the Thompson grants. Whatever title he had he conveyed to Bond & Bruce. However, it was incumbent upon appellee to trace its title back to the Commonwealth. This it has done. There are vague references in the evidence to the effect that the Commonwealth, prior to 1860, had granted 180,000 acres of land to Thomas Thompson, and the recitals in the deed to Hagan from Jacob and A. G. J. Baldwin are to the effect that he claims title to this whole Thompson tract. But Hagan's contention was apparently denied by Jacob and A. G. J. Baldwin, and in order to settle that controversy Patrick Hagan bought the Baldwins' title which they claimed under the Henderson grant. There was no evidence tending to locate the Thomas Thompson patent. The description in the deeds copied in the record is too vague to identify the land with any other grant.

In order for appellants to defeat appellee's claim to the land on the ground that there is an outstanding title in some third party, they must show that it is a present, subsisting, and operative legal title. Judge Buchanan, in *Reusens* v. *Lawson,* 91 Va. 226, 21 S. E. 347, 352, said that "an outstanding title in another to defeat the action of ejectment must be a present, outstanding, operative, and available legal title on which the owner could recover against either of the contending parties if asserting it by action."

See also, Burks' Pleading and Practice (3d Ed.), p. 216; *Smith* v. *Bailey*, 141 Va. 757, 127 S. E. 89. The evidence is insufficient to establish a present, outstanding, and operative legal title to the land in question in Thomas Thompson or anyone claiming under him.

Appellee established by evidence which is not materially contradicted that it acquired, through Bond & Bruce, the legal title to the land conveyed by the Commonwealth in 1926 to appellants; that Bond & Bruce acquired it on March 1, 1905, from Patrick Hagan and his wife; that it was included in the deed to Patrick Hagan bearing date May 14, 1890, from Jacob Baldwin and A. G. J. Baldwin; that the same land was included in a tax deed from Columbus Phipps, Clerk, to A. G. J. Baldwin on the same date; that the land was properly assessed against the heirs of A. F. Henderson; and that it was a part of the grant obtained by A. F. Henderson from the Commonwealth on July 3, 1860.

There being no substantial conflict in the evidence, it was the duty of the court to set aside the verdict and enter a decree in accordance with the prayer of appellee's bill.

The decree is affirmed.

*Affirmed.*